```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF KENTUCKY
 2                   CENTRAL DIVISION AT LEXINGTON


 3                            - - -
       UNITED STATES OF AMERICA,      .   Case No. 5:20-CR-00115
 4                                    .
                 Plaintiff,           .
 5                                    .   Lexington, Kentucky
                   - v -              .
 6                                    .   Monday, November 29, 2021
       SYED SHERAZ AHMED,             .   2:08 p.m.
 7                                    .
                 Defendant.           .
 8                            - - -

 9              TRANSCRIPT OF SENTENCING PROCEEDINGS
               BEFORE THE HONORABLE DANNY C. REEVES
10              UNITED STATES DISTRICT COURT JUDGE

11                            - - -

12

13     For the United States:     EMILY K. GREENFIELD, ESQ.
                                  Assistant U.S. Attorney
14                                United States Attorney's Office
                                  260 West Vine Street, Suite 300
15                                Lexington, Kentucky  40507

16     For the Defendant:         WILLIAM M. BUTLER, ESQ.
                                  500 West Jefferson Street, Suite 1520
17                                Louisville, Kentucky  40202
                                       and
18                                JACQUELINE M. MAYER, ESQ.
                                  Bleile & Dawson
19                                810 Sycamore Street, Fifth Floor
                                  Cincinnati, OH 45202
20
       Court Reporter:            LINDA S. MULLEN, RDR, CRR
21                                Official Court Reporter
                                  101 Barr Street
22                                Lexington, Kentucky  40507

23

24     Proceedings recorded by mechanical stenography, transcript
       produced by computer.
25
```

```
 1   (Proceedings in open court, November 29, 2021, 2:08 p.m.)
 2        THE COURT:  Thank you.
 3        Madam Clerk, would you call the matter scheduled for 2:00,
 4   please.
 5        THE CLERK:  Yes, Your Honor.  Lexington Criminal Action
 6   Number 20-115, United States of America versus Syed Sheraz
 7   Ahmed, called for sentencing.
 8        THE COURT:  Would counsel state their appearances, please.
 9        Ms. Greenfield.
10        MR. GREENFIELD:  Emily Greenfield for the United States.
11        THE COURT:  Thank you.
12        MR. BUTLER:  Good afternoon, Your Honor.  For the record,
13   I'm William Butler.
14        THE COURT:  Yes.
15        MS. MAYER:  Jacqueline Mayer, Your Honor.
16        THE COURT:  Thank you, Ms. Mayer.  This is Mr. Ahmed at
17   counsel table, thank you.
18        MR. BUTLER:  Yes.
19        THE COURT:  This matter is scheduled for a sentencing
20   hearing this afternoon.  Before we proceed with the hearing,
21   let me first confirm that Mr. Ahmed has had the opportunity to
22   review his presentence report and to discuss the report with
23   counsel to his satisfaction; is that correct?
24        THE DEFENDANT:  That is correct, sir.
25        THE COURT:  Your presentence report will be filed in the
```

1    record under seal pursuant to Rule 32 of the Federal Rules of

2    Criminal Procedure.  It's available for the parties, but it's

3    not available for the general public to review.

4         There are several objections to the presentence report

5    that are outlined in the addendum.

6         The objections previously filed by the United States have

7    been resolved, and one of the objections filed by the defendant

8    has been resolved, that's number 2.  The remaining five

9    objections are, first, the defendant objects to the

10   paragraphs 7, 8 --

11        MR. BUTLER:  Your Honor, excuse me for interrupting you.

12   We want to withdraw the other objections, except the objection

13   to paragraphs 66 and 67, about whether our client has the

14   ability to pay.

15        THE COURT:  All right.

16        MR. BUTLER:  And paragraph 47 was just not really an

17   objection, it was just a clarification, and we still want to

18   make sure we clarify that with the Court.

19        THE COURT:  All right.

20        MR. BUTLER:  But the other objections, we have researched

21   and believe that they are now unfounded.

22        THE COURT:  All right.

23        In that event, I will adopt the findings that are

24   contained in the presentence report, as well as the guideline

25   calculations.  The guideline calculations are not affected by

1    the remaining objections that the defendants have made in the

2    case.  We will address those separately, but the Court may at

3    this time adopt the guideline calculations.

4        I will note also for the record, I have reviewed the

5    authorities submitted by the United States in its sentencing

6    memorandum with regard to those objections filed by the

7    defendant.  The authority cited by the government do support

8    its position in this matter.  And while the Court is not

9    obligated to make findings on the objections having been

10   withdrawn, the Court does note that for the record.

11       Turning to the guideline calculations that are contained

12   in the presentence report, the 2018 edition of the guideline

13   manual has been used.  I will note for the record that there is

14   a 2021 manual online with the sentencing commission that does

15   not change any of the specific guidelines because there has not

16   been a quorum of commissioners in the sentencing commission to

17   modify any guideline since the 2018 manual.

18       There are some additional authorities or references to

19   statutory provisions contained in that 2021 version, but the

20   2018 manual and the 2021 online manual result in the same

21   calculations in this case.

22       As reflected in paragraph 21 the two counts of conviction

23   are grouped, Counts 3 and 5.

24       With regard to Count 3, the base offense level is a level

25   32.  There are four enhancements under Section 2G2.1.  The

1    first is the offense involved a minor at least 12 years of age

2    but having not reached the age of 16.

3         There is a two-level increase because the offense involved

4    sexual conduct.

5         And a two-level increase for the defendant knowingly

6    engaging in distribution.

7         And then finally, a two-level increase under

8    2G2.1(b)(6)(B).  And that two-level increase can be added for

9    offenses involving the knowing misrepresentation of a

10   participant's identity, or the use of a computer or interactive

11   computer service to solicit participation with a minor.

12        That results in the adjusted offense level of 40 for that

13   count.

14        Those same enhancements are applied with regard to

15   Count 5, that also has a base offense level of 32.  Those same

16   enhancements do result in an adjusted offense level of 40.

17        There's also the enhancement under Chapter 4, 4B1.5,

18   because the defendant engaged in a pattern of activity

19   involving prohibited sexual contact.  And that increases the

20   offense level to a level 45.

21        The defendant also receives a three-level reduction for

22   acceptance of responsibility.  Before the Court may apply the

23   third level of acceptance credit, it does require a motion from

24   the United States.

25        Ms. Greenfield.

1     MR. GREENFIELD:  We would so move for that additional

2 point, Your Honor.

3     THE COURT:  That motion will be sustained and that has the

4 effect of reducing the total offense level in the case to a

5 level 42.

6     Information regarding the defendant's criminal history is

7 contained in the report.  Paragraph 46 does reflect the related

8 state court conviction.  And as a result of it being related to

9 this matter, there's no points assessed for the conviction.

10     I believe, as Mr. Butler indicated, there is an objection

11 with regard to the term of incarceration.  The defendant was

12 sentenced to two years on each of Counts 1, 2, and 3, and one

13 year on Count 4, with those terms to run consecutive to produce

14 a total term of seven years for that conviction.

15     The defendant has no criminal history points which would

16 place him in Criminal History Category I.

17     The guideline range in this case would ordinarily be a

18 range of 360 months to life, but because of the statutory

19 provisions, the maximum sentence that could be imposed in the

20 case by stacking the offenses of conviction would be a total of

21 600 months.  So the range in this case does become a range of

22 360 to 600 months for the term of incarceration.

23     The range for supervision in the case is also set forth in

24 the report in paragraph 73.  For the two counts of conviction,

25 the supervised release range would be a range of five years to

1    life.

2          The fine range in the case is set forth in paragraph 79 of

3    the presentence report, and the fine range is a range of

4    $50,000 on the low end and $250,000 on the high end.

5          Ms. Greenfield, are there any claims for restitution in

6    this case --

7          MR. GREENFIELD:  No, Your Honor.

8          THE COURT:  -- by specified victims?

9          There is a provision of Title 18 that would obligate the

10   Court in a case such as this to impose a special assessment

11   unless the defendant is indigent.  But the section of the

12   statute, Title 18, 3014, indicates that beginning on the date

13   of the enactment of the Justice for Victims and Trafficking Act

14   of 2015, and ending on September 30th, 2021, in addition to the

15   assessment imposed under Section 3013, the Court shall assess

16   an amount of $5,000 on any non-indigent person.

17         Are you aware of whether this statutory provision has been

18   extended beyond September 30th?

19         MR. GREENFIELD:  It has, Your Honor.  It is running until

20   the end of the year.

21         THE COURT:  It has been extended to December 31st?

22         MR. GREENFIELD:  Yes.

23         THE COURT:  All right.  So there is the issue of indigency

24   of the defendant that we can take up.

25         MR. GREENFIELD:  Correct.

1      THE COURT:  All right.  I believe at the time the

2  defendant entered a guilty plea, the government had indicated

3  it would be moving to dismiss the remaining counts, Counts 1,

4  2, and 3 at the time of the sentencing.

5      Is that still the United States' motion?

6      MR. GREENFIELD:  We would be dismissing Counts 1, 2, and

7  4, Your Honor.

8      THE COURT:  I'm sorry, 1, 2, and 4.

9      MR. GREENFIELD:  That's fine.

10      THE COURT:  That is the government's motion.  That motion

11  is sustained, those additional counts will be dismissed

12  effective upon entry of the judgment in the case.

13      Are there any other motions to take up before we proceed

14  with allocution in the case?

15      MR. GREENFIELD:  No, Your Honor.  I do believe that

16  forfeiture has already been determined.

17      And then one thing, I don't think it makes any difference

18  to the guideline, but I just realized it when you say the 2018

19  manual had been used.  In the plea agreement, we had

20  recommended the 2015, there isn't any difference.

21      THE COURT:  Yes, ma'am.

22      MR. GREENFIELD:  So I just wanted to make sure that was

23  all clear.

24      THE COURT:  Yes, ma'am.  The guidelines would provide that

25  the Court should apply the manual in effect at the time of the

1    offense or at the time of the sentencing, if there are not any

2    changes that have been made, and so for that reason --

3         MR. GREENFIELD:  Thank you, sir.

4         THE COURT:  -- that's why the reference in the plea --

5    excuse me, in the presentence report will always refer to the

6    most recent manual unless there are favorable terms in the

7    earlier manual.

8         Thank you.  We will proceed with allocution in the case.

9         So at this time, Mr. Butler or Ms. Mayer, if you would

10   like to address the Court in allocution?  And then Mr. Ahmed,

11   you may also add anything that you wish after your attorneys

12   have finished.

13        Mr. Butler.

14        MR. BUTLER:  Your Honor, as to the indigency of our

15   client, we are retained counsel, but we've been retained by his

16   family.  He's been incarcerated for the last 39 months in state

17   custody before he was brought into the federal custody.  Your

18   Honor, he is indigent.

19        THE COURT: Yes, sir, Mr. Butler.

20        MR. BUTLER:  Your Honor, our client has written a letter

21   that was attached to our memo we filed the 19th of October.  If

22   the Court hadn't had a chance to look at that, I've got a copy.

23        THE COURT:  If you would like to pass that up, certainly.

24        MR. BUTLER:  Yes, Your Honor.

25        THE COURT:  To make sure I reviewed everything, do you

1   have the date in which that was filed?

2        MR. BUTLER:  I'm looking at my binder and it says that --

3   I certified that on the 19th day of October, I electronically

4   filed the foregoing with the clerk of the court.  Here's the

5   letter.

6        May I approach?

7        THE COURT:  Yes, if you would like to bring that up to the

8   clerk.

9        MR. BUTLER:  Thank you.

10       THE COURT:  I do not have that in my file and --

11       MR. GREENFIELD:  Your Honor, we have it as docket

12   entry 35.

13       THE COURT: 35?  All right.  Take a look again.  Yes, I

14   have received and reviewed the letter that was attached to the

15   objections that were filed.  It looks like it's the same

16   document.  All right.

17       MR. BUTLER:  The reason I believe that's important is when

18   our client wrote the letter to the Court, he wanted to point

19   out that although he's a naturalized United States citizen, he

20   grew up in Pakistan.  And the views -- I believe he expressed

21   in his letter the views of treatment of women are much

22   different there.  And he would like and I would like, Ms. Mayer

23   would like the Court to consider that upbringing in his -- in

24   his apology to the Court and to all the people that he's hurt

25   that's listed in the letter.  So that's why I think that's

1   important.

2        I can keep talking or I can wait for the Court.

3        THE COURT:  No, I have reviewed your letter.

4        MR. BUTLER:  Okay.

5        THE COURT:  I just wanted to make sure it was the same

6   letter that you were referencing.  Yes, sir.

7        MR. BUTLER:  Your Honor, I would ask on behalf of my

8   client that the Court take note of that when it pronounces its

9   sentence, as I would also like the Court to take note of the

10  fact that he has served 39 months of a seven-year sentence, a

11  state sentence, which was basically from all the same facts,

12  obviously it's different but from the same facts, the same

13  victim as we're before the Court today on.  And I would ask the

14  Court to please consider that in making a sentence that's

15  sufficient but not greater than necessary to meet the ends of

16  justice.  Thank you, Your Honor.

17       THE COURT:  Has the Department of Corrections -- has the

18  state agency determined how much more time the defendant has to

19  serve on his state sentence?

20       MR. BUTLER:  No, Your Honor.  He has -- he met the parole

21  board shortly before he was removed to federal custody, and the

22  parole board denied his parole application at that time.  They

23  did not give him a serve-out, but it was denied.

24       THE COURT:  All right.  Thank you.

25       MR. BUTLER:  Thank you, Your Honor.

1          THE COURT:   Mr. Ahmed, would you like to add anything to

2    what Mr. Butler has said on your behalf?

3          THE DEFENDANT:   Yes, sir.   I just want to say the same

4    thing.   I would want to apologize to the counsel and yourself

5    and everybody involved for my behavior.   I've made a lot of

6    wrong choices in my life, and unfortunately it's come to this

7    for me to realize what choices I made and the effect that it's

8    had on people from both sides of the case, me and my family

9    included and the victim's family.

10         And I just want to apologize first and foremost.   I've

11   took full accountability for it when I went through the state

12   proceeding on the charges that were brought up because there's

13   no denying what I did.   And I'm doing the same thing here as

14   well because I know that the things that I did were wrong.

15         Unfortunately, it took me through that prison sentence in

16   the state for me to realize why they were wrong morally.   I

17   have to understand the impact or the effect that it had on the

18   victim and the families and the people involved on that side.

19         At this point, I just want to apologize for my behavior.

20   I just -- I feel helpless that I've -- I want to have the

21   opportunity to prove myself that I can recover from this.   And

22   unfortunately, I don't see that light at the end of the tunnel

23   just based on the amount of time I'm looking at.   So I just am

24   asking for consideration for that, sir.

25         THE COURT:   All right.   Thank you.

1      Ms. Greenfield.

2      MR. GREENFIELD:  Your Honor, we are asking for a guideline

3  sentence of at least 30 years in this case.  And of course the

4  plea agreement, the presentence investigation report pretty

5  much says it all, so I'll keep this brief.

6      But this is a case in which the defendant not only had

7  possession of child pornography, which he was in possession of

8  when he was arrested, but was actively engaged with a

9  14-year-old girl who he would watch after sending him sexually

10  explicit photos.  Sent her a vibrator for her birthday causing

11  her to make a masturbation video, traveled the interstate with

12  the intent to have sex with her.  He told this 14-year-old

13  girl, as he admitted in his plea agreement, that he loved her

14  and would not hurt her.

15      The concern from the government is that other young teen

16  girls need to be protected from this defendant and from others

17  like him.  They need to be deterred from doing this in the

18  future.

19      While this conduct perpetrated against a child of any age

20  is terrible, the teen population seems to be a group that may

21  be most at risk for exploitation by internet strangers such as

22  the defendant.

23      I had previously given defense counsel a copy of what I

24  have as Government's Exhibit A.  If we may approach, Your

25  Honor?

1          THE COURT:  Yes, ma'am.

2          MR. GREENFIELD:  This isn't the totality of that online

3   publication, but it is at least the face sheet and page which I

4   drew some quotes from for the sentencing commission's 2021

5   Federal Sentencing of Child Pornography:  Production Offenses

6   report.  And that can be found at

7   wwwussc.gov/sites/default/files/pdf/research-and-publications/

8   research-publications/2021/20211013_production-cp.pdf.

9          But quoting from that, internet strangers who produce

10  child pornography typically have teen victims.

11         In this report on page 5, which is attached there in our

12  Exhibit A, found that while the youngest victims would often be

13  approached in person, "the youngest victim for nearly

14  two-thirds of remote child pornography production offenders'

15  victims were teenagers, who were more likely to have access to

16  the internet, cells phones, or social media."

17         That report also states that "over one-third of production

18  offenders sentenced in fiscal year 2019 were internet strangers

19  who met their victims through an online platform."

20         Teenagers are now online more than ever for school due to

21  COVID and the way trends in learning are changing.  And that

22  environment needs to be kept safe as they explore and use those

23  tools, and this is the platform which the defendant met this

24  victim through Facebook, had many young Facebook female

25  friends.

1          So again, we believe that the nature of the offense and

2     the need for deterrence is very strong in this case, and we

3     would recommend a 30-year sentence, Your Honor.

4          In terms of indigency, we have no other evidence other

5     than what's in the report, we believe that he will be

6     incarcerated for quite a long time to come, so we really defer

7     to the Court in terms of any type of fine or the special

8     assessment in this case.

9          THE COURT:  Thank you.

10         In determining an appropriate sentence in this case, of

11    course I do begin from the properly calculated guideline range.

12    There is a minimum term of incarceration for Count 5, but the

13    guideline range greatly exceeds the minimum period.

14         For Count 3, the Court may impose a sentence of not more

15    than 30 years; and for Count 5 it's not less five nor more

16    than 20 years.  The guideline range in this case is a range of

17    360 to 600 months as I indicated earlier.

18         The defendant has previously been convicted for

19    substantive sex crimes against the victim.  And as indicated,

20    of course, is serving what was announced as a seven-year

21    sentence, we don't know a potential release date.  The Court

22    does have the option under Chapter 5, 5G1.3 I believe, of

23    running this sentence concurrent or consecutive with the

24    undischarged term of incarceration for the state offense.

25         And in this particular instance, looking at all the facts,

1    I do believe that running the sentence concurrently with the

2    undischarged sentence in state court would be appropriate.  We

3    don't know what that will be, but quite frankly and typically,

4    the state court system would effectively run its sentence

5    concurrently in any event, but I will announce and include in

6    the judgment that this sentence will be concurrent with the

7    undischarged state sentence in the case.  That does take into

8    account some of the arguments that are outlined in the

9    defendant's letter.

10       The guidelines do provide a starting point for the Court's

11   analysis.  In this case, it is a lengthy term based upon the

12   defendant's conduct in the case.  And in addition to the

13   information quoted by the United States from the recent, I

14   believe it's the October publication from the sentencing

15   commission, I would also refer the parties to another

16   interesting article published by Alexandra Galber.  She is with

17   the Department of Justice in Washington in this particular

18   division on child offenses.

19       It's entitled, Response to A Reluctant Rebellion.  She

20   responds to an article in an ABA journal that essentially

21   criticizes the sentencing commission for imposing these

22   enhancements or including these enhancements for this type of

23   offense, or these offenses.  She responds, I believe, very

24   appropriately in explaining why these individual enhancements

25   are appropriate in cases such as this.  I'll call that to your

1    attention.

2        The Court also considers the factors of 3553 in

3    determining what would be an appropriate sentence.  The

4    3553 factors do include the circumstances of the offense, as

5    well as the history and characteristics of the defendant.

6        Circumstances of the offense are quite serious and severe.

7    The history and characteristics of the defendant do include, of

8    course, his criminal history and the nature of criminal

9    history, because sometimes that does impact a likelihood of

10   recidivism.

11       But in this particular case, the defendant does not have

12   any criminal history points, and the conviction that's

13   referenced in part B is the related conduct in the case.

14       I also consider the arguments that have been made both in

15   the letter as well as by counsel that the defendant was raised

16   in Pakistan in which this type of behavior would not be

17   aberrant or unusual behavior.  I cannot accept that argument

18   for several reasons.

19       Dealing with a young girl in this matter is not acceptable

20   in this culture and it should not be acceptable in any culture,

21   number one, morally or otherwise.

22       But number two, legally it is not acceptable and the

23   defendant should understand that.

24       Number two, this defendant, while he may have been raised

25   in his early years in Pakistan, has been in the United States

1   since turning 17, I believe, according to the presentence

2   report.  So over the course of 23 years, if there is any type

3   of cultural indication that this is acceptable, it should have

4   been washed away a long time ago.  This is not acceptable

5   conduct in any shape, manner or form and it cannot be excused

6   by making those type of excuses.  It's just certainly not

7   acceptable.

8        The United States is also correct in indicating that this

9   type of threat is ever increasing with the use of the internet

10  and students having to now use electronics more and more at a

11  younger and younger age.  It gives opportunities for

12  individuals wishing to prey on young children the access and

13  the ability to attempt to do that.

14       Counsel indicated in her remarks that the defendant made

15  plans and then had the opportunity to engage in sexual contact

16  with the victim.  He actually did that, and he did it in a very

17  severe way as reflected in the presentence report.

18       So the Court does believe this is a serious offense.

19  There is a need to provide deterrence, not just for the

20  defendant but also for others that might be inclined to commit

21  a similar offense.

22       The Court is also aware of the need oftentimes to provide

23  rehabilitative services under Title 18, Section 3553.  In this

24  case, I will be recommending to the Bureau of Prisons that the

25  defendant participate in the sex offender treatment program.

1    It would appear to be appropriate based upon the nature of his

2    conduct in this case.

3        The Court also considers the need to avoid unwarranted

4    sentencing disparities among defendants with similar records

5    who have been found guilty of similar conduct.

6        While I am mindful that when we look at statistical

7    information and information from the sentencing commission,

8    that a number of courts will vary downward for these offenses

9    from the guideline range.  Courts will vary downward a great

10   percentage of time for these type of offenses as well as career

11   offender issues, but I do not find it to be appropriate to vary

12   downward in this case, but I do not believe that a sentence

13   above 360 months would be necessary to serve any of the reasons

14   that are outlined in the statute, 3553.

15       So in this case, I will impose a sentence of 360 months,

16   but it will be -- it will run concurrently with the

17   undischarged term of the sentence that was imposed by the state

18   court that is reflected in the presentence report in

19   paragraph 47.

20       So I will announce the sentence at this time.

21       It will be the sentence of the Court pursuant to the

22   Sentencing Reform Act of 1984, as modified by the decisions in

23   *Booker* and *Fanfan*, and I do find that the following sentence

24   would be sufficient but not greater than necessary to comply

25   with the purposes of Title 18, Section 3553(a):

1    Therefore, it will be the judgment of the Court that the
2    defendant, Syed Ahmed, will be committed to the custody of the
3    Bureau of Prisons for a term of 360 months on Count 3 and
4    120 months on Count 5 to run concurrently, to produce a total
5    term of 360 months.
6    That sentence will also be concurrent to any undischarged
7    term of incarceration imposed by the state court that is
8    referenced in paragraph 47 of the presentence report.
9    As indicated, I will recommend to the Bureau of Prisons
10   that the defendant participate in a sex offender treatment
11   program during the period of incarceration.
12   Upon release, he will placed upon supervision for a life
13   term as to each of Counts 3 and 5 to run concurrently.
14   Within 72 hours of release, he must report in person to
15   the probation office in the district in which he is released.
16   While on supervision, he may not commit another federal,
17   state or local crime.
18   He must comply with the mandatory and the standard
19   conditions adopted by the Court and that will be set forth in
20   the judgment and commitment order.
21   In addition, he must comply with the following special
22   conditions:
23   They include that he abstain from the use of the alcohol.
24   Next, that he may not purchase, possess, use, distribute
25   or administer any controlled substance or paraphernalia

1   relating to controlled substances, except as prescribed by a

2   physician.   And he may not frequent places where controlled

3   substances are illegally sold, used, distributed or

4   administered.

5        He may also not use or consume marijuana or marijuana

6   products even if that were to be prescribed to him by a

7   physician, licensed professional or other person.

8        The following conditions will also be imposed based upon

9   the nature of the offenses:

10        First, the defendant will be required to participate in a

11   program for treatment of mental health and sexual disorders and

12   undergo a sex offender risk assessment, psychosexual evaluation

13   and/or other evaluation as needed.

14        He will be subject to periodic polygraph examinations and

15   computer voice stress analysis testing at the discretion and

16   direction of the probation office.

17        He must also follow the rules and regulations of the sex

18   offender treatment program as implemented by the probation

19   office.

20        His residence and employment must be preapproved by the

21   probation office and in compliance with state and local law.

22        He may not frequent, volunteer or work at places where

23   children under the age of 18 congregate, and that would be

24   unless approved by the probation office.   And he may not have

25   any contact with victims in the case.

1    He may not associate or have verbal, written, telephonic

2    or electronic communications with any person under the age

3    of 18 without the permission of the probation office.  This

4    would not include persons under the age of 18 such as ticket

5    vendors, cashiers and waiters and waitresses and the like with

6    whom he must deal in order to obtain ordinary and usual

7    commercial services.

8    There will also be a restriction on materials.  He may not

9    possess, view, listen to or go to locations where any form of

10   pornography, sexually stimulating performances or sexually

11   oriented materials, items or services are available.

12   He must not possess or a use device capable of creating

13   pictures or videos without the approval of the probation

14   office.  In some cases, I have made modifications to this

15   condition based upon the need to use smart phones, for example,

16   but in this case I'll not make that exception at this time, but

17   I will note that I would consider modification at a later time

18   upon the defendant's release, but he must first seek the

19   approval of the probation office.

20   He may not rent or use a post office box or storage

21   facility without the approval of the probation officer.  And he

22   must register as a sex offender as prescribed by state law.

23   There is a restriction on computer usage.  He may not

24   possess or use a computer or any device with access to any

25   online computer service at any location, including his place of

1   employment, without the prior written approval of the probation

2   office.  This includes any internet service provider, bulletin

3   board system or any public or private network or email system.

4       He must consent to the probation office conducting

5   unannounced examinations of his computer system, as well as any

6   internal or external storage devices, and that may include the

7   retrieval and copying of all memory from the hardware and

8   software, and the removal of such systems for the purpose of

9   conducting a more thorough inspection.

10      And he must consent to having installed on his computer

11  any hardware or software to monitor his computer usage or

12  prevent access to particular materials, and consent to periodic

13  inspection of any such installed hardware and software to

14  ensure that it is functioning properly.

15      He must also provide the probation office with accurate

16  information about his entire computer system as well as any

17  internal or external storage devices, and he must provide all

18  passwords.  And he must abide by all rules of the computer

19  restriction and monitoring program.

20      Next, he must submit his person, as well as his residence,

21  office, vehicle or any property under his control to a search

22  conducted by the United States Probation Office.  The failure

23  to submit to a search would be grounds for revocation of

24  supervision, and he must inform all residents that his premises

25  would be subject to a search according to this condition.

1    He must also provide the probation office with access to

2  any requested financial information.  Now, this condition is

3  included to allow the probation office to monitor his purchases

4  of electronics or peripheral devices, as well as any internet

5  service subscribed to or accessed to by him.

6    As indicated earlier, there's been no claim for

7  restitution in this matter and therefore the Court does not

8  find it necessary to delay the proceeding under Title 18,

9  Section 3664(d)(5) in order to determine restitution.

10    Based upon the information that has been provided to the

11  Court, at this time it does appear that the defendant is

12  indigent and is unable to pay the assessment that is otherwise

13  required by Title 18 of the United States Code, Section 3014.

14  The Court will excuse him of that requirement, of that special

15  assessment.

16    And likewise, the Court will not impose a fine in the case

17  based upon the Court's determination as to indigency.  I

18  believe that to impose a fine would create an undue hardship on

19  his family, and therefore the fine requirement would not be

20  required and would be waived under 5E1.3 of the sentencing

21  guidelines.

22    The defendant is required to forfeit his interest in

23  certain property listed in the forfeiture allegation which has

24  been the subject of a preliminary judgment of forfeiture, but

25  that property will also be listed and identified in the

1    judgment itself.  And that would include the SanDisk card; the

2    Samsung digital camera, the serial number will be included; as

3    well as the GPS Tom Tom and all software and peripherals

4    contained or associated with the listed devices.

5           And that will be the judgment of the Court.

6           In just a moment, I will ask the clerk to advise the

7    defendant of his appellate rights.  As outlined in the plea

8    agreement in the case, the defendant waived the right to appeal

9    the guilty plea and conviction but did not waive the right to

10   appeal the sentence, and he does retain that right.

11          Before I ask the clerk to provide that information to the

12   defendant, I'll ask the attorneys to state any objections that

13   they may have, first to the sentence that has been announced,

14   and that would include the conditions of supervised release.

15          Second would be any objections under *United States versus*

16   *Bostic*.  Under that decision from the Sixth Circuit, any

17   objections not previously raised should be raised at this time

18   so that they may be addressed by the Court to be properly

19   preserved for review on appeal.

20          And then finally, if the parties would like the Court to

21   make additional findings to support the sentence or any of the

22   conditions of supervision that have been announced, I'll

23   certainly do so if requested.

24          Ms. Greenfield, I'll begin with you.

25          MR. GREENFIELD:  Your Honor, we have no objections to the

1   sentence imposed, no *Bostic* objections and do not require

2   further explanation.

3          THE COURT:  All right.  Thank you.

4          Mr. Butler.

5          MR. BUTLER:  Your Honor, on the defense side, we feel the

6   same, no objections.

7          THE COURT:  All right.

8          MR. BUTLER:  Your Honor, while I'm standing here, I

9   realize that the Court can't direct the Bureau of Prisons where

10  to take our client, but I think the Court can make a

11  recommendation.  Would you please recommend Lompoc, California?

12  That's where his mother and his brother live.

13         THE COURT:  I will include that as a recommendation.  But

14  I will also advise the parties that under Section 601 of the

15  First Step Act, the Bureau of Prisons does have an obligation,

16  to the extent practicable, the BOP shall designate the place of

17  imprisonment closest to the defendant's primary residence and

18  within 500 driving miles of the residence.  So there is that

19  obligation, but I will also include the recommendation for

20  placement near Lompoc, California.  Thank you.

21         Madam Clerk.

22         (The form entitled "Court's Advice of Right to Appeal" was

23  read aloud in open court by the clerk.)

24         THE COURT:  Thank you.

25         Mr. Butler, if you would like to come up and pick up that

1   acknowledgment of rights, I'll ask you to review that with the

2   defendant.  I'll also return your letter, the extra letter that

3   you provided to me.

4       Madam Clerk, if you could pass this over to Mr. Butler?

5   And also give you Exhibit A, the United States exhibit to

6   maintain in the file.

7       Mr. Ahmed, Mr. Butler is about to review with you the

8   acknowledgment of rights that was read by the clerk.  Please

9   take a moment to review that acknowledgement of rights.  After

10  you have assured yourself you understand those rights, if you

11  could please sign that original document, there is a copy that

12  you can keep for your records.

13      Thank you.

14      See if we have any other issues to take up before we

15  recess for the afternoon.

16      MR. GREENFIELD:  Nothing from the government, Your Honor.

17      THE COURT:  Mr. Butler, anything else?

18      MR. BUTLER:  Your Honor, nothing other than would the

19  Court appoint an attorney for him?  I don't know what he will

20  want to do, but this will be the end of his paid

21  representation.

22      THE COURT:  The Court would not appoint an attorney

23  because the Court has not been provided with financial

24  information, so the defendant would be first required to

25  request that counsel be appointed if you withdraw from the

1   case.

2       If you file a notice of appeal prior to withdrawing from

3   the case, then that matter would be taken up by the Sixth

4   Circuit.

5       After the notice of appeal has been filed, if you file a

6   motion to withdraw, you can withdraw from this part of the case

7   but not from the appeal.  So that's a bit complicated, but the

8   bottom line is I have to have financial information from the

9   defendant before I can appoint counsel --

10      MR. BUTLER:  Thank you.

11      THE COURT:  -- in the case.

12      All right.  Any other issues to take up?

13      MR. GREENFIELD:  No, Your Honor.

14      THE COURT:  All right.  Thank you.  We will be in recess.

15      (Proceedings concluded at 2:55 p.m.)

16

17                  C E R T I F I C A T E

18      I, Linda S. Mullen, RDR, CRR, do hereby certify that

19   the foregoing is a correct transcript from the record of

20   proceedings in this above-entitled matter.

21

22   /s/Linda S. Mullen          January 27, 2022
     Linda S. Mullen, RDR, CRR   Date of Certification
23   Official Court Reporter

24

25