UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal Action No. 5: 20-115-DCR |
| Plaintiff/Respondent, ) | and |
| ) | Civil Action No. 5: 23-272-DCR |
| V. ) | |
| ) | |
| SYED SHERAZ AHMED, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant/Movant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant/Movant Syed Ahmed pleaded guilty to violating 18 U.S.C. § 2423(b) (interstate travel with intent to engage in illicit sexual conduct with an individual between 12 and 16 years old) and 18 U.S.C. § 2252(a)(2) (knowing receipt of a visual depiction of a minor engaging in sexually explicit conduct). [Record No. 29] He was sentenced on November 29, 2021, to a total term of incarceration of 360 months.[1] [Record No. 43] Ahmed appealed his sentence; however, it was affirmed by the United States Court of Appeals for the Sixth Circuit. [Record No. 65]

**I.**

On September 28, 2023, Ahmed filed the instant motion to vacate his sentence, pursuant to 28 U.S.C. § 2255. [Record No. 67] His motion contains well over a dozen arguments. [Record No. 67]. The United States opposes Ahmed's motion, noting that "his

---

[1]  Ahmed was sentenced to 360 months' imprisonment for violating 18 U.S.C. § 2423(b) to run consecutive to 120 months' imprisonment for violating 18 U.S.C. § 2252(a)(2). [Record No. 43]

- 1 -

claims are waived, procedurally defaulted, non-cognizable, and/or meritless." [Record No. 78, p. 1].

Consistent with local practice, Ahmed's § 2255 motion was referred to a United States Magistrate Judge for review and issuance of a report pursuant to 28 U.S.C. § 636(b)(1)(B). United States Magistrate Hanly A. Ingram reviewed the motion and issued a Recommended Disposition and Order, recommending that Ahmed's motion to vacate be denied and that no Certificate of Appealability be issued. [Record No. 87] Ahmed was advised that he had fourteen days within which to file written objections to any findings or recommendations contained within the Recommended Disposition and Order and that by doing so, those objections would be subject to *de novo* review by the undersigned.[2]

## II.

Ahmed's filed objections to the Magistrate Judge's recommendations on March 11, 2024. [Record No. 88] However, most of his assertions are vague, conclusory, attempt to relitigate evidentiary and factual findings, or deny previous admissions made in court or memorialized in the plea agreement that he signed. These arguments have already been considered and discussed at length by Magistrate Judge Ingram and the undersigned agrees with the findings articulated in the Recommended Disposition and Order.

With few exceptions, Ahmed's recent filing ignores the conclusions reached by the Magistrate Judge and simply repackages the same arguments for *de novo* review. Although it

---

[2] While this Court must make a *de novo* determination of those portions of the Magistrate Judge's recommendations to which an objection is made, 28 U.S.C. § 636(b)(1)(C), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Arn*, 474 U.S. at 150.

is unnecessary to readdress each argument, the undersigned will nonetheless briefly explain why none of Ahmed's objections provide a vehicle for the relief he requests.

A.

Ahmed argues that his double jeopardy claim was misconstrued. [Record No. 77, p. 1]. In doing so, he reasserts the same speculative and conclusory argument that Magistrate Judge Ingram considered and properly rejected. [*See* Record Nos. 87, 88.] Ahmed alleges, without evidence, that the state prosecution against him was merely a "sham" to facilitate the federal government's case. But it is not enough to merely assert this as a "fact". As noted in the Recommended Disposition, "Ahmed would need to establish either that his prosecution by Kentucky was a sham directed by the United States or that the federal prosecution was a sham directed by Kentucky." [Record No. 87] (citing *United States v. Djoumessi*, 538 F.3d 547, 550 (6th Cir. 2008)). He has failed to meet this burden.

B.

Ahmed challenges the conclusion reached regarding his equal protection claim. But once again, he offers no substantive evidence of discrimination. Ahmed ignores the legal standard outlined in the Recommended Disposition and merely provides an anecdote about a fellow inmate before concluding: "So there is no doubt that race and discrimination played a part in the defendant's prosecution. If the court expects a signed affidavit by the DA then that will never happen." [Record No. 88, p. 2]

To the contrary, a criminal defendant must provide some evidence in support of a claim that the decision to prosecute had a discriminatory effect and that it was motivated by a discriminatory purpose. [*See* Record No. 87] (citing *United States v. Armstrong*, 517 U.S. 456,

465 (1996)). While such a showing requires less than an affidavit admitting discrimination, it does require more than unsupported conjecture.

## C.

When addressing the defendant's Speedy Trial Act claim, Magistrate Judge Ingram notes that Ahmed was indicted on October 15, 2020, taken into federal custody thereafter, and pled guilty on July 12, 2021. [Record No. 87, p. 8] Ahmed responds by asserting that "[t]he delay being questioned and challenged is from arrest which was in September 2016 and federal indictment in 2020 and plea in July 2021." [Record No. 88] He argues that this delay was "for tactical advantage" because it prevented him from challenging and overturning the State's narrative. [*Id.*]

First, Ahmed's 2016 arrest on state charges has no bearing on the Court's consideration of his Constitutional right to a speedy trial on separate federal charges. As has been noted previously, "the Speedy Trial Clause's protections begin when a defendant is either (1) indicted or (2) arrested and held to answer [for] a criminal charge." [Record No. 87, p. 7] (citing *United States v. Marion*, 404 U.S. 307, 320 (1971)). The period between Ahmed's indictment and his entry of a guilty plea was 8 months and 27 days.

Magistrate Judge Ingram noted that, "[a] one-year delay presumptively violates the Speedy Trial Clause" and that "[a]t that point, a court must evaluate various factors to determine whether an indictment must be dismissed due to delay." [*Id.*] (citing *United States v. Cope*, 312 F.3d 757, 777–78 (6th Cir. 2002)); *see Barker v. Wingo*, 407 U.S. 514, 530–33 (1972) (identifying the four *Barker* factors to be evaluated by the court). He concluded that, because less than a year had passed between the two dates, there was no need to inquire into

other *Barker* factors.³ But he did so anyway and concluded that the factors still do not support a finding that Ahmed's constitutional right to a speedy trial was violated. The undersigned agrees.

To the extent that Ahmed claims that the delays provide further evidence of the federal government's "sham" prosecution and was due to the government's reliance upon "the state prosecution narrative," his wholly unsupported speculation does not suffice. [Record No. 88]

**D.**

Ahmed raises several objections to Magistrate Judge Ingram's discussion of asserted *Brady* violations and the existence of meta-data that Ahmed claims, "would prove that the things the victim is pinning on [Ahmed] is actually this other person." [Record No. 88, p. 3] These objections are completely meritless and simply an attempt to undermine the admissions contained within his plea agreement. [*See* Record No. 31, ¶ 3.] These issues are thoroughly

---

³ While a one-year delay presumptively violates the Speedy Trial Clause, it does not follow that a lesser delay is presumptively valid or that no further inquiry is required. *See Barker*, 407 U.S. at 531 n.31 (citing favorably a First Circuit case in which a nine-month delay was deemed overly long). A delay must be sufficiently "long" to trigger review of the other *Barker* factors, *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986), and "[a] one-year delay is presumptively prejudicial and triggers analysis of the remaining *Barker* factors, *Brown v. Romanowski*, 845 F.3d 703, 714 (6th Cir. 2017) (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)). But the Sixth Circuit has also held that "[a] delay *approaching* one year is presumptively prejudicial," *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006) (emphasis added). In *Cain v. Smith*, the Sixth Circuit concluded that an eleven-and-a-half-month delay in a "mundane garden variety" robbery case triggered review of the other *Barker* factors. 686 F.2d 374, 376 (6th Cir. 1982). In that same case, the Sixth Circuit cited favorably several cases from sister circuits where delays as short as 8 months warranted further review. *Id.* at 381 (collecting cases). The Sixth Circuit has concluded that, "the 'customary' delays during any litigation—such as a five-month delay—automatically pass muster under the Sixth Amendment." *United States v. Allen*, 86 F.4th 295, 305 (6th Cir. 2023) (citing *Doggett v. United States*, 505 U.S. 647, 651 (1992)). Accordingly, when it comes to delays of between five months and those approaching one year, the Court's need to review the other *Barker* factors will remain case specific.

covered in Section III.E of the Magistrate Judge's Recommended Disposition and Order and need not be repeated here.

### E.

Ahmed claims that he received ineffective assistance of counsel during sentencing. The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), sets forth a two-prong test for evaluating claims of ineffective assistance of counsel. First, the defendant must show that counsel's performance was deficient; and second, that the deficiency prejudiced the defendant. *Id.* at 686. To demonstrate deficiency, Ahmed must show that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. This standard is highly deferential, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Ahmed argues that counsel failed to present mitigating arguments at sentencing which would have resulted in a reduced term of incarceration. But as Magistrate Judge Ingram reasoned, even if the Court had found deficient performance, "there is no reasonable probability that Ahmed would have received a lesser sentence if this limited information were presented." [Record No. 87, p. 23] Ahmed's objection is again conclusory in nature: "That is untrue, after all of what the defendant demonstrated . . . ." [Record No. 88, p. 5] He then names a number of points and arguments that he alleges counsel failed to make, including "[a] clear record, a bipolar diagnosis, SOTP,[4] disabled mother, community service, vocational skills, low recidivism, . . ." [*Id.*] But as Magistrate Judge Ingram has already discussed, this

---

[4] "SOTP" is an acronym for Sex Offender Treatment Program.

information was known to the Court at the time of sentencing. The undersigned concludes that this argument is without merit.

The Presentence Investigation Report ("PSR") referenced during sentencing describes Ahmed's criminal history (or lack thereof), [PSR, Part B], physical and mental health, [*Id.* ¶¶ 57–59], mother's disability, [*Id.* ¶ 54], and vocational skills, [*Id.* ¶ 61]. While his more recent bipolar diagnosis was not included in the PSR, Ahmed made this assertion during the change of plea hearing. [Record No. 63, p. 5]. During the sentencing hearing, his counsel sought confirmation that the Court had a chance to review a letter Ahmed had written to the undersigned—bringing a copy just in case. [Record No. 62, p. 9] In that letter, Ahmed stated: "When I went through the sex offender treatment program in state prison, I learned a lot about myself and my conduct." [Record No. 35-1, p. 2] At that time, the undersigned confirmed receiving and reviewing the letter. [Record No. 62, p. 10] And despite being aware of Ahmed's completion of a state sex offender treatment program, the undersigned deemed it necessary to recommend the completion of another program as a term of Ahmed's federal sentence.

The fact that a state-ordered assessment deemed Ahmed a "low risk" to reoffend did not impact the Court's sentencing determination. As the undersigned noted during the sentencing hearing, the history and characteristics of the defendant can impact the likelihood of recidivism. [Record No. 62, p. 17] The Court then acknowledged that Ahmed had no criminal history points, and his only conviction was the related conduct in this case. [*Id.*] The Court was implicitly aware that Ahmed presented a statistically lower likelihood of reoffending. There is no reasonable basis to belief that further confirmation of that assumption would have impacted the sentencing determinations.

Finally, Ahmed's sentencing guideline range was 360 months to life, based on a Total Offense Level 42 and Criminal History Category I. [Record No. 62, p. 5] However, the relevant statute capped the maximum sentence at 600 months. Ahmed was sentenced at the bottom of the guideline range—360 months. The undersigned noted that, while "a number of courts will vary downward for these offenses from the guideline range. . . . I do not find it appropriate to vary downward in this case." [*Id.* at 19]

Ahmed has not shown that his counsel was deficient in any way. But even if he had made such a showing, the defendant has not demonstrated that there is a reasonable probability that, but for the deficiency, he would have received a lesser sentence.

### F.

Ahmed argues that the Recommended Disposition fails to address the Court's decision to run his federal sentence concurrently to the undischarged portion of his related state sentence. This argument simply constitutes a disagreement with the undersigned's exercise of sentencing discretion. Federal courts indeed "have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that have been imposed in other proceedings, including state proceedings." *See Setser v. United States*, 566 U.S. 231, 236 (2012); 18 U.S.C. § 3584(a). And here, the undersigned determined that Ahmed's federal sentence should run concurrently with the undischarged term of the sentence that was imposed by the state court. [Record No. 62, p. 19] And while the Sentencing Guidelines are not binding on the Court, the undersigned's sentencing determination is consistent with §5G1.3.

### III.

The Court declines to issue a Certificate of Appealability. *See* Rule 11 of the Rules Governing § 2255 Proceedings; 28 U.S.C. § 2253(c)(1)(B). A Certificate of Appealability may be issued only when the defendant makes "a substantial showing of the denial of a constitutional right." § 2253(c)(2). To satisfy that burden, Ahmed is required to show that reasonable jurists could debate whether the motion should have been resolved differently or that the issues involved "deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, reasonable jurists would not debate this Court's conclusions. Most Ahmed's arguments regarding counsel's performance are nothing more than conclusory allegations that counsel should have performed differently. And his remaining claims are either without merit, waived, or otherwise improper. Without demonstrating an actionable cause for relief, these claims cannot proceed further.

### IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The Recommended Disposition and Order of the United States Magistrate Judge Hanly A. Ingram [Record No. 87] is **ADOPTED** and **INCORPORATED** here by reference.

2. Defendant/Movant Syed Ahmed's objections [Record No. 88] to the United States Magistrate Judge's Recommended Disposition and Order are **OVERRULED**.

3. Defendant/Movant Syed Ahmed's motion to vacate, correct, or set aside his sentence under 28 U.S.C. § 2255 [Record No. 67] is **DENIED**. His claims are **DISMISSED**, with prejudice, and **STRICKEN** from the docket.

4. A Certificate of Appealability will not issue.

Dated: April 10, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky